Good morning, Your Honors. My name is Joseph Persoff, and I'm appearing on behalf of plaintiff's appellants, the surviving children of decedent Nora Martinez. Your Honors, defendant is a common carrier, and under long-established California law, defendant owed Nora Martinez the utmost duty of care to warn her about the danger of developing deep vein thrombosis. There's no question that they had the utmost duty of care. The question is whether they had to warn about the DVT. And if they had to warn, what are the considerations that I have to look at to determine that? Your Honor, the California Supreme Court has clearly laid out the analysis the court should undergo when determining whether to carve out a category. I realize they laid it out, so what are the considerations I need to look at? As I understand it, there is a four-part test under California law, would you agree? We're into bystander liability, right? Your Honor, before the bystander liability, that's in regard to Ms. Martinez's son, but specifically for the duty to warn Ms. Martinez. Okay, so in there, what are the things that I have to look at? So the first step in the analysis is identifying the duty, which we have done here. And the next step is you look at the Roland factors, which consist of seven separate factors. And then a court analyzes them and determines whether those factors clearly support carving out such an exception. Now the district court here only considered one of those factors, foreseeability, and analyzed it in a vacuum. Well they went to foreseeability because that's probably the factor that's the most prevalent in this evaluation. The one that's maybe even the most important. Your Honor, the case law has recognized that foreseeability is the most important. That's what I was trying to suggest. So the district court went into foreseeability, and after getting through foreseeability, the district court said nothing left. Well, Your Honor, I think that's correct. That is the approach the district court took. And I guess because it's the most important, I'm having a tough time seeing why that is error. Because Your Honor... If you don't make foreseeability, I don't think you're going to make any of the other factors. Well, Your Honor, first, I do believe we can establish foreseeability clearly. Well then let's check there first. What are we going to look for for foreseeability? Your Honors, numerous organizations have recognized the connection between extended periods of immobility and the subsequent risk of developing DVT. For example, the World Health Organization, the Center for Disease Control, the United States Surgeon General, Defendant's Sister Company, as well as Defendant's own employees when deposed acknowledge this connection themselves. Defendant's person most knowledgeable about their warnings given to their passengers acknowledges this himself. He said when he went on a long trip to Europe, he got up and walked around himself. Well, the problem that I have with all of this is that it seems based on the evidence and the record that it's unknown whether developing DVT can be prevented by issuing the warning you suggest. Well, I think the medical literature acknowledges ways to prevent. What evidence do you have, and I guess this is the underlying question, what evidence do you have that there's a clear causal link between sedentary, being sedentary like I am, and developing DVT? What's the best you got? I think the World Health Organization report, as well as the Surgeon General's report, they all acknowledge the connection, and they acknowledge That causation, that's the problem. The World Health Organization said the totality of the evidence suggests that there is an association between venous thrombosis and air travel. There may be issues that require clarification. So is that definitive enough? I think it is. When you look at that in combination with the further developing medical literature, it paints a clear connection. It seems as if it's just one factor in causing the disease. If I look at what Dr. Carrillo said, for instance, he says, I have no medical documentation to support the suggestion that immobility was a contributing factor in the death. He said, I admit, I was speculating when I said that I knew the lack of ambulation caused the blood clots. That's what he said. If I look at what Dr. Malakmer, I don't know how you say it exactly, Malakmer, he said, it's not the mobility, it was caused by the heat and the period of mobility. So nobody's saying it causes it. Everybody says it's just one factor in the test. If I go to what Transportation Safety Specialist Docker says, he said, DVT is not a prevalent or common issue or concern for motor coach passengers or any over-the-road drivers. He said, no regulatory agencies charged with protecting passengers and the public promulgate rules pertaining to DVT. I mean, all of that worries me how I'm going to say there's a clear causal link. That's why I keep beating you about that. So I think the way the medical literature explains it, I believe it's the Surgeon General Report explains that the prolonged period of immobility is a triggering event. And so when you combine that with some of these other factors, such as being over the age of 40, being obese, being pregnant, or having recently given birth, that creates sort of a, for lack of a better term, dangerous cocktail, which puts you at this acute risk. And also, one of the caution I want to suggest is that the California Supreme Court has explained that in conducting duty analysis, you must do it from a general level of factual approach and not into the specifics of this particular case, because duty is to everyone. And in this case, we would look at the specific facts under the breach and causation factors. I guess I'm having real trouble with why the district court didn't call it right. The district court says the science of DVT has not yet reached the point where common carriers can foresee that passengers are in danger of developing DVT when they travel by bus. Then he cites documents submitted by the plaintiffs, Centers for Disease Control, the World Health Organization, which is exactly as Judge Rawlinson has suggested it, Dr. Malcommer, and he goes down through, and when I looked at the record, I had a tough time disagreeing. It seems to me you're on the cusp, but there's nobody saying that it causes it. Well, Your Honor, I'd also like to note that the district court took a somewhat contradictory position when the district court also noted, there's no doubt in my mind that DVT can be developed in long-distance travel. And the district court also noted... But just to say that it can be developed doesn't say what the cause is. Your Honor, I think that what the medical literature and the studies conclude is that there are several factors and that prolonged periods of immobility is a triggering event that sets you off on this path to develop this potential deadly condition. And if you look in, for example, defendant's sister company, Scott Rail, has been warning about this for over 10 years. And the defendant has actual knowledge about this. They warn their own drivers about it. So it's almost like this fiction that they're operating in where they, on the inside, they acknowledge that there's this connection. But when it comes in the legal proceeding, they claim that knowledge. And for example, they... Well, it seems to me that if I look to the test that is in Scott versus Chevron, which is the California Court of Appeal test, there are four parts of that test. The first is that what specific measures that you assert the defendant should have taken. I think you meet that test. Second one is how financially and socially burdensome would those measures be? And it seems to me the fact that there's an affiliated company that does the same thing says it can't be that burdensome. But that's not the end. The next is what is the nature of the harm that you claim could have prevented, been prevented, if the defendant had taken the measures? How foreseeable is that that the harm would occur? On that issue is why I've asked you the questions. Because I don't believe we've met that issue. You may have met the first two on the arguments you're just now making. But it's that last number three, which I don't think you've got to. And then the number four, I got to compare the burden of the foreseeability in determining the duty. And so there I am. I'm stuck. I understand, Your Honor. So the California Supreme Court has defined the standard for foreseeability. And they define it as whatever is likely enough in the setting of modern life that a reasonably thoughtful person would take account of it in guiding practical conduct. And we have evidence that defendant has already done that. They warn their drivers about it. They themselves know about it. They're essentially hiding this information from their passengers just because... If you had some clear causal link, you may be right. But just because one company does one thing and one does another doesn't make it causally right. Does it? Your Honor, I think that it's established this literature, a reasonably thoughtful company would look at this literature and say, okay, the World Health Organization, the United States Surgeon General, the Center for Disease Control, and numerous other authorities have acknowledged that there's a connection here. Now, reasonably thoughtful. And also, we need to keep in mind that this is within the context that they owe the utmost duty of care. This isn't a general duty of care. If that principle is supposed to mean anything, it needs to be applied to a heightened standard. But that all sounds good if we don't look at foreseeability. If you say, meet the utmost care and diligence, so you've got to meet that whether it's foreseeable or not. Anything that comes down the pike, you've got to do something about it, whether it's foreseeable or not, then I think your argument makes sense. But if you say, I have utmost care and diligence, but I only have to use that utmost care and diligence on things that have the degree of certainty that is necessary, then again, the degree of certainty necessary controls whether you need the utmost care and diligence. And again, we're back to number three in the case that I talked to you about. Your Honor, I think that, I mean, obviously, you've read the literature, and I think that the literature establishes, meets at that level of a reasonably thoughtful person would take into account the fact that these organizations have all considered this, and they've noticed this connection. And also, the Haines case, which defendant relies on, that was about 10 years ago. And in that case, it was probably the most similar issue to the one at hand. And in that case, the plaintiff relied on the World Health Organization. Now, it requires a little reading between the lines, but the district court intimated that if that World Health Organization report had been around when the injury occurred, that this case, that case would have come out differently. As the court said, a plaintiff that suffered a DVT injury today would bring a claim under different circumstances. And also, Your Honor, I forgot the point I was going to make, but I think that considering all this evidence, a reasonably thoughtful company would say, look, there is this connection that these major organizations, the most major in the world, have recognized this connection. And therefore, we should take this duty, we should warn our customers. I mean, the district court acknowledged that defendants, that these common carriers acknowledge this danger, and that passengers don't have knowledge of this danger. That is the exact situation why a duty to warn exists. And of course, the district court acknowledged essentially a negligible burden on the defendants. So defendants have to overcome this burden to show that it is clearly supported to overcome this duty that it's presumed that they owe. And unless there are any further questions, I'll reserve the rest of my time for rebuttal. All right. Good morning. May it please the court. Jeffrey Miller, Lewis, Brisbois, Biscard, and Smith on behalf of Defendant Annapolis Greyhound Lines Incorporated. Since the focus has been completely on the duty issue, I'm going to hop right in there. There's one point I think that bears extra emphasis and something that the district court judge noted as well. I mean, not only is there no case that is on point saying there's a duty to warn of the DVT, but even more important I think in a lot of ways is there's no federal government regulations saying there should be a warning. And that's really important in this context. And the reason I say that is because the transportation industry is heavily regulated when it comes to safety. We have obviously the FAA for airlines, but just for this client, for motor carrier safety administration. We have the National Highway Traffic and Safety Administration. And these agencies are told, their actual goal and what they do is to look into things to see if there's a need for warnings and safety for passengers. Are there any warnings included in any of those regulations you've listed? Are there any warnings for any passenger issues? No, Your Honor, not in this area. No, at all. Are there any regulations that you can cite that contain a requirement to give warnings on any matter? There are on airlines, Your Honor, for the seatbelts and things like that relevant to things that have to be said according to, for passenger safety. Yes, for the FAA. I thought you, what I thought you were giving us was a list of regulations that encompass a duty to warn. And so that would make your point that there is no regulation addressing duty to warn in this case. But if that isn't a regularly occurring requirement in those regulations, the point isn't well taken as far as I'm concerned. Well, the point I'm making is this, Your Honor. These agencies are in their job, their function is to actually take all of the data, look at all of the evidence on an issue like this DVT, look at the studies, and their job is to provide guidance. And through their work with safety advocates, health organizations, they then determine whether the evidence is sufficient to rise to that level to require some type of a warning. But the problem is, that's why I'm not sure you understood Judge Rawlinson's question. Problem is, if they do that on other areas besides DVT, did they come out with any warnings that needed to be given? I mean, you're saying they've never said anything about DVT, but they have looked at all these other places, and are you saying they've also given warnings in those other places where they've looked or where they've done investigation? I'm just saying, Your Honor, in light of certain aspects, I'll give you an example of one I can think of off the top of my head. I don't have anything, you know, in this record. I mean, I'm not so sure your argument is good anyway, but I'm just trying to develop it. I'm trying to see what you're really trying to tell me. If you're just saying, if this was really necessary, the federal government would have given a warning or would have told us to and they haven't here, and they've given them in other places. All she asked was, what were the other places where they gave the warning? Right. The only thing that we have in the record, Your Honor, is something that a reference to, for example, the cell phone issues that we've had recently. There's regulations regarding, and statutes in states and the government, about using cell phones while driving. I have a tough time when I'm trying to figure out what So I'm not really taken with your argument anyway, but I was just trying to develop it, if you were going to develop it. I mean, I'd get back to, I mean, you have an utmost care and diligence for safe carriage. That's your duty. You're a common carrier. You have to exercise all reasonable care to get there. It seems to me that the, in fact, Lopez would say, you must do all of the human care, vigilance, and foresight you can reasonably do under the circumstances. Those are pretty high barriers. And all I was saying is, in order for me then to decide that, I have to decide the degree of certainty that there would be that plaintiff would suffer injury. And that's where the district court modeled its decision. Counsel says the district court was a bunch of junk because they only talked about the degree of certainty, and they should have examined the rest of the factors. That's why I said to him, come on, it's the most important factor. If you can't make that one, you can't make any of the others. So he backed off. Now we're on degree of certainty. What do you got to say about that? Well, Your Honor, I agree with the comments, obviously, that was made earlier. There has to be a sufficiency close connection between the failure to warn about the DVT and whether the category of the negligent conduct is sufficiently likely to result. And again, there is no evidence, medical or otherwise, in this record, and that could be found relevant to the actual DVT from travel for an extended period of time, causing DVT. There's no causal link, and that is exactly the problem. And I asked the court to look closely into the evidence that was just mentioned and was cited. The World Health Organization report, for example, that was cited. The reference there was, again, and that was directed... And we didn't look closely at it? No, I think you did, Your Honor, but just to emphasize certain things. Interesting, this was again as to airlines. Airlines are a lot different than motor carriages because with airlines you are... And again, this was relating to intercontinental travel where you're going to be in an airplane for a long period of time. You can't get out of an airplane, and there's considerations of pressure in the airplane, et cetera, that have an effect on conditions. But here, of course, in a motor coach, and the record is clear here, that this driver stopped every three hours. So there was obviously an opportunity to do it. It's a different scenario than the World Health... And there's also reference that only to a possible link. It talks about an association, not a direct causal link. And that's the problem that the district court judge had here. It was not quantifiable as based upon the evidence that was presented to show the causal link. And the risk was very, very small. And where there was a measurable risk, it was really with characteristics of the passengers, individual characteristics, like whether you were pregnant, whether you were on hormone therapy, and different factors, which, of course, under a lot of the cases, a few of the cases cited in our brief, general rule of transportation companies are not charged with knowledge of individual characteristics. It's very difficult and a very difficult burden. The Surgeon General Report, by the way, which has some numbers of people who are affected by this disease, that report does not tie to travel. And it certainly doesn't tie in then to motor coach. So what we're dealing with is the actual evidence, the real evidence here, does not establish that causal link that is required. The same thing with the experts that were presented here. Dr. White testified that there's no of developing DVT increases above normal expected background risk in the general population. And the plaintiff's expert was relying, again, when he makes his report, and actually his particular statement as to cause of this fell way short. He said maybe there was some immobility, but not that it was because of this bus. And that was critical because she was, don't forget, traveling from El Salvador for seven to eight days on numerous buses, including in El Salvador and in Mexico. So that was a very important determination. And that testimony that he gave was based upon the authority that we just talked about, that is the World Health Organization report, et cetera. So the court is absolutely correct, the district court, when it said that the closeness of the connection was not sufficient. As to public policy, a couple of the things in the Rowland factors I think bears some discussion because I think it shows a problem with imposing such a duty as a duty to warn in this case. First, moral blame. This is not a situation where there's a positive negligent act. This is an act of blame in relation to where the evidence is unsettled medically as to whether there is a causal connection. So to say that you don't give a warning and the evidence is not there, and you're relying on guidance from federal agencies and you don't give a warning, that's hardly moral blame. What do you do to this argument that your opposition makes that, well, you have a sister company who gives these warnings all the time? Your Honor, that is in my recollection that's from Scotland, and it's a far removed company. They choose to do that is whatever the reason they choose to do it. I don't have any factual basis for those particular facts of what they are aware of. Well, it seemed a little uneasy for you to suggest that if you have a sister company who's making the warnings that you're suggesting that you then don't meet the degree of certainty test. Well, Your Honor, voluntary doing something at their request is different, I think, in relation to a mandatory obligation to warn under the law where there's no close connection. I think that's the real issue here of the mandatory nature of it. A voluntary act is a voluntary act. I'm not going to say it's wrong, but we're talking about a mandatory act based upon the idea that there is such a close connection that it requires that type of activity. I'd like to close with this, Your Honor. I think when we look at the notion of preventing future harm, again, and I make this point because I think it is relevant, that this is a heavily regulated industry. I think the agency themselves that are involved in public safety are probably the best suited when we look at all of the studies that are all over the world to determine has the actual risk risen to a medical level that require a affirmative mandate of a duty. I think they're in a better position than even this Court because of the ability of them to look at all aspects of the case as opposed to a single case. With that, I'll submit my remaining. All right. Thank you, Counsel. Rebuttal. Your Honors, in response to that last point, the arguing about the lack of regulation, but that such an argument would lead essentially to the federal usurpation of state law. This is a matter of state law. Under state law, they owe this utmost duty of care. Going throughout the record, the evidence provided on summary judgment, the Surgeon General referred to DV immobility as a triggering event. The CDC called it a serious risk. Defendant relies on their expert, Dr. White. As part of plaintiff's evidence, they included a pamphlet from UC Davis, which included an article from Dr. White. On that very same page, it discusses the connection between immobility and DVT. Your Honor, I think that your Honor's in light of how this has been recognized throughout the industry and defendant's actual knowledge and the fact that this is a and the resulting negligible burden to defendant for simply warning its passengers. I think in light of those factors, defendant is unable to establish that the factors identified by the California Supreme Court and Roland clearly support carving out an exception to this duty, which California has established, has existed since the 19th century. All right. Thank you. Thank you, Your Honors. Thank you to both counsel. The case just argued is submitted for decision by
judges: Fernandez, Rawlinson, N.R. Smith